Reese, J.
delivered the opinion of the court.
At the March term, 1845, of the circuit court for Jackson county, the plaintiff in error, for the use of the State, recovered a judgment, on motion, against John Seanland, sheriff of Jackson county, and his securities, for the sum of three hundred and sixty eight dollars, besides costs, for his official default as collector of the State taxes for that county, for having failed to collect and pay over said taxes, for the year 1844.
At the November term, 1845, of said circuit court, the defendants in error, the said securities, petitioned said court for a writ of error comm nobis, which was granted; and thereup *197 on it appeared that, at the time of the election in March, 1844, of said sheriff, and his induction into office by giving his official bond, &c., he was a defaulter to the State for taxes, by him collected and not paid over in the term of his she-riffalty, which immediately preceded his election; and that, therefore, he was improperly, and against the express provision of the statute of 1843-4, inducted into the office.
Upon this state of facts being made to appear to the circuit court, at its said November term, 1845, it was adjudged, that the judgment rendered against the petitioners in the writ of error coram nobis, at the said March term, 1845, should be vacated, and for nothing held.
The plaintiff, for the benefit of the State, has prosecuted his appeal in error to this court; and, now, the only question is, whether the judgmént in the circuit court, in the writ of error coram nobis, be correct or erroneous. We are of opinion that it is erroneous. To be sure, it is of the utmost importance, that the statute referred to should be rigidly enforced, and the county court inducting the sheriff into office, should firmly discharge their duty and enforce the law, however the electors may have overlooked, or disregarded the statute. But, if through ignorance of the facts, inadvertence, or other cause, the defaulting officer be inducted into office, and give the bonds required by law, and thus become sheriff defacto, and collect public taxes, such a consequence as the discharge of his sureties from their voluntary obligations, does not, in reason or upon principle, result from the legal incapacity of the officer and the omission of the county court to perform its duty.
The election of the sheriff was void, and his induction into the office illegal, and he did not thereby become Sheriff de jure; but thus intruding himself into the office, and assuming its duties, he became sheriff defacto; and those who voluntarily bound themselves for the faithful performance of his duties, cannot absolve themselves from their obligation, by insisting that he was no sheriff. They will be held to their undertaking, till the proper public authority has produced his am-otion from the office which he in point of fact fills. We do not understand that there is any thing in the case of the Jus *198 tices of Jefferson county against Newman,'inconsistent with this view of the subject.
In the elaborate judgment of Chief Justice Marshall, in the case of the United States vs. Maurice, et als., reported in 2 Brockenborough, page 97, the general principle is determined, that, “where an appointment to office is irregular, is contrary to law, and its policy, this does'not absolve the person so appointed from the moral and legal obligation to account for public money, which has been placed in his hands in consequence of such appointment.” He says, page 113: “ I consider the appointment of James Maurice to the office as invalid, but the question, Js the bond void on that account, remains to be considered. It was undoubtedly intended as an office bond, and was given in the confidence that James Maurice was legally appointed to office. If the suit was instituted to punish him for neglect of duty, in the nature of nonuser, or for any other failure which could be attributable in any degree to the illegality of his appointment, I should be much disposed to think the plea a bar to the action. But this suit is brought to recover the money of the U. States, which came to the hands of James Maurice, in virtue of his supposed office, and which he has neither applied to the purpose for which he received it, nor returned to the treasury. In such a case, neither James Maurice, nor those who undertook for him, can claim any thing more than positive law affords them.”
The Chief Justice then distinguished the case before him from those cases, where the bond was given for an illegal consideration, as the case in 2 Wilson, 341; to compound a felony, and also the cases in 9 East. 408 and 416, and adds, with regard to them: “These cases differ in principle from that at bar. The bond, in the case at bar, was not given to induce the illegal appointment, or from any purpose in itself unlawful. The appointment had been made, and the object of the bond was to secure the regular disbursement of, or otherwise accounting for, public money advanced for a lawful purpose. The bond, then, was not unlawful, though the appointment was;” and he adds, in conclusion, page 117-18: “The justice of the case requires, I think, very clearly, that *199 the defendants should be liable to the extent of their undertaking, and I do not think that the principles of law discharge them from it.”
The facts, the illustrations, the reasoning, and the authority of the case of the U. S. vs. Maurice and his securities, very forcibly apply, we think, to the case before ourselves.
Let the judgment of the circuit court,' at its November term, in the case of the writ of error coram nobis, be reversed and set aside, letting the judgment of that court, at its March term, 1845, remain-in full force, and let a procedendo issue in order that said last mentioned judgment may be fully carried into effect.